STATE OF NORTH CAROLINA v. KARSHIA BLIAMY LY AND JEFFREY XIONG

No. COA07-578

(Filed 1 April 2008)

## 1. Kidnapping— first-degree—motion to dismiss—sufficiency of evidence—restraint separate from robbery with dangerous weapon

The trial court did not err by denying defendants' motions to dismiss the five first-degree kidnapping charges even though defendants contend the restraint of the victims was an inherent part of robbery with a dangerous weapon instead of a separate or independent restraint or removal because: (1) defendants bound and blindfolded each victim as he or she entered the room, forced them to lie on the floor, and left the victims bound; (2) one of the victims attempted to escape, but was brought back to the house at gunpoint and was bound and blindfolded; and (3) the restraint of the victims was not necessary to effectuate the armed robbery, and the victims were placed in greater danger than that inherent in the offense of robbery with a dangerous weapon.

## 2. Kidnapping— first-degree—motion to dismiss—sufficiency of evidence—safe place

The trial court did not err by denying defendants' motions to dismiss the five first-degree kidnapping charges even though defendants contend the victims were released in a safe place because: (1) defendants committed no affirmative or willful act to release the victims in a safe place; (2) defendants departed the premises leaving the victims bound, blindfolded, and without access to a telephone; and (3) although defendants contend their victims were released in a safe place since they were left bound in their home, the mere departing of a premises was not an affirmative act sufficient to effectuate a release in a safe place.

**3. Burglary and Unlawful Breaking or Entering— indictment—location and identity of building entered**

The trial court did not err by denying defendants' motions to dismiss the charges of breaking and entering even though defendants contend the indictment failed to sufficiently allege the location and the identity of the building entered because: (1) both indictments allege defendants broke and entered a building occupied by Xang Ly used as a dwelling house located at Albemarle, North Carolina; and (2) although the evidence at trial tended to show that Xang Ly owned several buildings including six rental houses, the evidence also showed there was only one building where he actually lived, which was the 1147 Hilltop Street residence.

**4. Burglary and Unlawful Breaking or Entering— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendants' motions to dismiss a breaking and entering charge even though defendant contends the State failed to present sufficient evidence that defendants intended to commit robbery with a dangerous weapon as alleged in the indictment because the evidence showed: (1) defendants entered the victims' home with the knowledge that members of the family would arrive at the home while defendants were still inside; (2) defendants were not surprised and were prepared for the arrival of the first victim as demonstrated by the immediacy with which defendants accosted, bound, and blindfolded him; (3) defendants asked the first victim the location of members of his family, thus demonstrating that defendants were familiar with the family; (4) as each member of the family arrived home, defendants were well prepared to overcome them in the same manner in which they overcame the first victim; (5) defendants were armed with two guns when they entered the victims' home; and (6) defendants took a black bag containing money from one of the victims.

**5. Evidence— hearsay—corroboration—limiting instruction**

The trial court did not err in a double robbery with a firearm, multiple first-degree kidnapping, and felonious breaking and entering case by admitting alleged hearsay testimony from a detective as corroboration even though one defendant contends it contradicted the testimony of one of the victims because: (1) the trial court gave a limiting instruction to the jury to only

consider the detective's testimony for the purpose of assessing the credibility of the witnesses that had already testified and for no other purpose; (2) the testimony was not elicited to corroborate one particular family member victim's testimony, but was intended to corroborate the testimonies given by three family members; and (3) although one victim testified at trial that he did not give this defendant's name to the detective as a suspect on 2 April 1999, the two other victims testified at trial that they did.

**6. Constitutional Law— effective assistance of counsel—failure to present evidence during sentencing hearing—trial strategy**

Defendant did not receive ineffective assistance of counsel in a double robbery with a firearm, multiple first-degree kidnapping, and felonious breaking and entering case based on defense counsel refraining from speaking or presenting evidence during defendant's sentencing hearing because defense counsel's decision to remain silent was strategy and trial tactics properly left within the control of counsel.

Judge WYNN concurring in the result.

Appeal by defendants from judgments dated 8 May 2000 by Judge Sanford L. Steelman, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 27 November 2007.

*Attorney General Roy Cooper, by Assistant Attorney Generals Creecy Chandler Johnson and Harriet F. Worley, for the State.*

*Gilda C. Rodriguez for defendant-appellant Karshia Bliamy Ly.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant Jeffrey Xiong.*

BRYANT, Judge.

Karshia Bliamy Ly and Jeffrey Xiong (defendants) appeal from judgments dated 8 May 2000 and entered consistent with jury verdicts finding defendants guilty of two counts each of robbery with a firearm, five counts each of first-degree kidnapping, and one count each of felonious breaking and entering. We find no error.

*Facts & Procedural History*

On 1 April 1999, at approximately 5:30 p.m., Nhia Ly arrived at 1477 Hilltop Street in Albermarle, North Carolina where he resided with his parents, Kia and Xang Ly, and his wife and his two children. Nhia noticed nothing unusual when he approached the sliding glass door entrance to the house. However, after entering the house, as he walked towards the kitchen, Nhia was accosted by four unmasked males. One of the males pointed a gun in his face while the others shouted obscenities at him and ordered him to get down on the floor and "shut up." Once Nhia was on the floor, the assailants turned his head to the right, blindfolded him, and tied his hands behind his back. The assailants asked Nhia where his mother, wife and children were, then dragged him into the bathroom. While still bound and detained in the bathroom, Nhia overheard his father's truck pull into the driveway, his father enter the house, and the assailants restrain and bind him. Over the next five to ten minutes Nhia also overheard his mother, his sister-in-law, and his brother enter the house and the assailants attack and restrain each person.

The State also presented the testimony of Xang Ly, Nhia's father. Xang Ly testified he entered the Hilltop Street house through the front door at approximately 5:45 p.m. carrying a black bag containing currency in the amount of $8,000.00. Xang Ly testified that defendant Ly approached with a gun pointed towards him. Two other men came from behind defendant Ly, took the black bag, pushed Xang Ly, tied his hands behind his back, and blindfolded him. Xang Ly identified defendant Ly as one of the assailants and testified he recognized defendant Ly because defendant Ly's family were tenants in one of his rental properties. The State also presented the testimonies of Kia Ly, Nou Ly, and Pheng Ly. Each witness testified to substantially the same facts as Nhia Ly and Xang Ly.

On 2 August 1999, defendant Ly was indicted on one count of breaking and entering, two counts of robbery with a dangerous weapon, and five counts of first-degree kidnapping. On 13 September 1999, defendant Xiong was indicted on one count of breaking and entering, two counts of robbery with a dangerous weapon, and five counts of first-degree kidnapping. Defendants' cases were joined and came on for trial on 1 May 2000. On 5 May 2000, a jury returned a verdict finding both defendants guilty of one count of breaking and entering, two counts of robbery with a dangerous weapon, and five counts of first-degree kidnapping. In a judgment dated 5 May 2000, the trial court sentenced each defendant to two consecutive terms of

64 to 86 months imprisonment followed by two consecutive terms of 73 to 94 months imprisonment. Defendants appeal.

Defendants jointly raise four issues: (I) whether there is sufficient evidence of restraint apart from that inherent in the offense of robbery with a dangerous weapon to support the kidnapping convictions; (II) whether there was sufficient evidence that the victims were not released in a safe place to support the first-degree kidnapping convictions; (III) whether the indictments of breaking and entering were fatally defective because they did not sufficiently allege the identity and location of the building; and (IV) whether the breaking and entering convictions must be vacated because there is insufficient evidence that defendants intended to commit a felony at the time of the entry. In addition, defendant Xiong raises two separate issues: (I) whether the trial court erred by admitting hearsay evidence as corroborative testimony; and (II) whether defendant Xiong received effective assistance of counsel during the sentencing hearing. For the reasons given below, we find no error.

*I & II*

**[1]** Defendants argue the trial court erred by denying their motions to dismiss the first-degree kidnapping charges. We disagree.

The standard of review for a motion to dismiss is, "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (quotation and citation omitted). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). "Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992).

*A. Restraint of victims*

Defendants argue the first-degree kidnapping charges should have been dismissed because the restraint of the victims was an inherent part of robbery with a dangerous weapon and no separate or independent restraint or removal occurred. We disagree.

First-degree kidnapping is the unlawful confinement, restraint or removal from one place to another, of any other person 16 years of age or over without the consent of such person for the purpose of facilitating the commission of any felony or facilitating flight of any person following the commission of a felony. N.C.G.S. § 14-39(a) (2007). "A person may not be convicted of kidnapping and another felony if the restraint or removal is an inherent and inevitable element of the other felony, such as robbery with a dangerous weapon." *State v. Morgan*, 183 N.C. App. 160, 166, 645 S.E.2d 93, 99 (2007). "The key question is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping exposed the victim to greater danger than that inherent in the armed robbery itself." *State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998) (citation and quotations omitted). Our Supreme Court held in *State v. Pigott*, 331 N.C. 199, 415 S.E.2d 555 (1992):

> all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he exposed the victim to a greater danger than that inherent in the armed robbery itself. This action, which had the effect of increasing the victim's helplessness and vulnerability . . . constituted such additional restraint as to satisfy that element of the kidnapping crime.

*Id.* at 210, 415 S.E.2d at 561.

In *Morgan*, the defendant was convicted of two counts of both first-degree kidnapping and robbery with a dangerous weapon. *Morgan*, 183 N.C. App. at 163, 645 S.E.2d at 97. This Court, in upholding the defendant's kidnapping convictions, determined that the restraint was not a necessary part of the robbery because the defendant placed the victims in greater danger than that inherent in the armed robbery by binding the victims' wrists with duct tape. *Id.* at 166, 645 S.E.2d at 99. Likewise, in *Beatty*, the defendant was convicted of two counts of kidnapping. *Beatty*, 347 N.C. App. at 556, 495 S.E.2d at 368. Our Supreme Court upheld the defendant's conviction as to one of the victims because the defendant restrained that victim by binding his wrists. *Id.* at 559, 495 S.E.2d at 370. The Court reasoned that by binding the victim, defendant "increased the victim's helplessness and vulnerability beyond what was necessary to enable him and his comrades to rob the restaurant." *Id.*

Here, defendants bound and blindfolded each victim as he or she entered the home, forced them to lie on the floor, and left the victims bound. In addition, one of the victims attempted to escape, but was brought back to the house at gunpoint, and was bound and blindfolded. As in *Beatty* and *Morgan*, the restraint of the victims in the present case was not necessary to effectuate the armed robbery and the victims were placed in greater danger than that inherent in the offense of robbery with a dangerous weapon. Accordingly, defendants' motions to dismiss were properly denied. This assignment of error is overruled.

### B. Release in a Safe Place

[2] Defendants argue their first-degree kidnapping convictions should be vacated because the victims were released in a safe place. We disagree.

Kidnapping is of the first-degree when "the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted[.]" N.C. Gen. Stat. § 14-39(b) (2007). Releasing a person in a safe place "implies a conscious, willful action on the part of the defendant to assure that his victim is released in a place of safety." *State v. Jerrett*, 309 N.C. 239, 262, 307 S.E.2d 339, 351 (1983). Mere relinquishment of dominion or control over the person is not sufficient to effectuate a release in a safe place. *State v. Love*, 177 N.C. App. 614, 625, 630 S.E.2d 234, 242 (2006).

In *Love*, the defendants were convicted of four counts of first-degree kidnapping. Like defendants in the present case, the defendants in *Love* contended that their victims were released in a safe place because the victims were left bound in their own home. This Court held that "the mere departing of a premise" was not an affirmative action sufficient to effectuate a release in a safe place. *Id.* at 626, 630 S.E.2d at 242. Similarly, in *Morgan*, the defendant left the victims restrained by duct tape in their hotel room after the defendant stole the victims' cash and cell phones. This Court, in upholding the defendant's first-degree kidnapping conviction, reasoned there was no "affirmative or wilful action on the part of defendants to 'release' the victims." *Morgan*, 183 N.C. App. at 167-68, 645 S.E.2d at 100.

As in *Love* and *Morgan*, defendants in the present case committed no affirmative or wilful act to release the victims in a safe place. Defendants departed the premises leaving the victims bound, blindfolded, and without access to a telephone. Without any action on

either defendant's part to release the victims in a safe place, there was sufficient evidence to submit a charge of first-degree kidnapping to the jury. Therefore, the trial court did not err by denying defendants' motions to dismiss the first-degree kidnapping charges and defendants' convictions stand. Accordingly, this assignment of error is overruled.

## III

**[3]** Defendants argue their breaking and entering judgments should be vacated because the indictments failed to sufficiently allege the location and the identity of the building entered. We disagree.

An indictment alleging breaking and entering of a building under N.C. Gen. Stat. § 14-54 must describe the building to show that it is within the language of the statute and to identify it with reasonable particularity "so as to enable the defendant to prepare his defense and plead his conviction or acquittal as a bar to further prosecution for the same offense." *State v. Sellers*, 273 N.C. 641, 650, 161 S.E.2d 15, 21 (1968).

In the present case, both indictments allege defendants broke and entered "a building *occupied* by Xang Ly used as a dwelling house located at Albermarle, North Carolina[.]" (emphasis added). Defendants argue the indictments failed to sufficiently identify the building because Xang Ly owned six buildings used as dwelling houses and the indictments do not specify which building defendants broke and entered. Defendants base their argument on *State v. Smith*, 267 N.C. 755, 148 S.E.2d 844 (1966), where our Supreme Court vacated a conviction of breaking and entering because the indictment alleged the defendant broke and entered a building occupied by the Chatham County Board of Education but did not specify the particular building. *Id.* at 756, 148 S.E.2d at 845. *Smith* is distinguishable from the present case.

In the case before us, the indictments identified the particular building defendants allegedly broke and entered as "a building occupied by Xang Ly used as a dwelling." Unlike the indictment in *Smith*, the description of the building in the present case specifically identified the building as a building which Xang Ly used as a dwelling. Although the evidence at trial tended to show that Xang Ly owned several buildings, including six rental houses, the evidence also showed there was only one building where Xang Ly actually lived— the 1147 Hilltop Street residence. Therefore, we hold the indictments where sufficient to reasonably identify the building as required by

N.C.G.S. § 14-54. Accordingly, the trial court did not err in denying defendants' motions to dismiss. This assignment of error is overruled.

*IV*

**[4]** Defendants argue the trial court erred by denying their motions to dismiss the breaking and entering charges because the State failed to present sufficient evidence that defendants intended to commit robbery with a dangerous weapon as alleged in the indictments. We disagree.

Breaking and entering is defined as "break[ing] or enter[ing] any building with [the] intent to commit any felony or larceny therein[.]" N.C. Gen. Stat. § 14-54(a) (2007). Although a breaking and entering indictment is not required to state the specific felony a defendant intended to commit, *State v. Worsley*, 336 N.C. 268, 281, 443 S.E.2d 68, 74 (1994), "when the indictment alleges an intent to commit a particular felony, the State must prove the particular felonious intent alleged," *State v. Wilkinson*, 344 N.C. 198, 222, 474 S.E.2d 375, 388 (1996) (citation omitted). *See also State v. Silas*, 360 N.C. 377, 383, 627 S.E.2d 604, 608 (2006). "An essential element of the crime is that the intent exist at the time of the breaking or entering." *State v. Hill*, 38 N.C. App. 75, 78, 247 S.E.2d 295, 297 (1978).

The indictments in the present case specifically allege defendants broke and entered the Ly home with the intent to commit the felony of robbery with a dangerous weapon. The elements of robbery with a dangerous weapon are: "1) the unlawful taking or attempt to take personal property from the person or in the presence of another; 2) by use or threatened use of a firearm or other dangerous weapon; 3) whereby the life of a person is endangered or threatened." *State v. Wiggins*, 334 N.C. 18, 35, 431 S.E.2d 755, 765 (1993). Thus, the State was required to prove defendants intended to commit robbery with a dangerous weapon at the time of the breaking and entering.

Defendants argue there was insufficient evidence of their intent to commit robbery with a dangerous weapon at the time they entered the Ly home. "Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred." *State v. Gammons*, 260 N.C. 753, 756, 133 S.E.2d 649, 651 (1963). In breaking and entering cases, "[t]he intent to commit the felony must be present at the time of entrance, and this can but need not be inferred from the defendant's

subsequent actions." *State v. Montgomery*, 341 N.C. 553, 566, 461 S.E.2d 732, 739 (1995).

Here, the evidence shows defendants entered the Ly home with the knowledge that members of the Ly family would arrive home while defendants were still inside. The evidence also shows defendants were not surprised when Nhia Ly arrived home, but were prepared for his arrival as demonstrated by the immediacy with which defendants accosted, bound and blindfolded Nhia Ly. Also, the evidence shows defendants asked Nhia Ly the location of members of his family, demonstrating that defendants were familiar with the Ly family. As each member of the Ly family arrived home, defendants were well prepared to overcome them in the same manner in which they overcame Nhia Ly. In addition, the evidence shows defendants were armed with two guns when they entered the Ly home. The evidence presented was sufficient for the jury to conclude that defendants intended to commit robbery with a dangerous weapon at the time defendants entered the Ly home. Accordingly, the State met its burden of proving each element of breaking and entering including intent. Therefore, this assignment of error is overruled.

### Defendant Xiong's Appeal

### I

### Corroborative Testimony

[5] In addition to the issues raised jointly with defendant Ly, defendant Xiong argues he is entitled to a new trial because the trial court erroneously admitted hearsay testimony. We disagree.

Defendant Xiong specifically argues Detective Danny Bowen's testimony was erroneously admitted as corroborative testimony because it contradicted the testimony of one witness, Nhia Ly. Nhia Ly testified at trial that during an interview with Detective Bowen on 2 April 1999, he did not identify defendant Xiong as a suspect. Later, Detective Bowen testified that during the interview with the Ly family on 2 April 1999, Nhia, Pheng, and Nou Ly were the primary family members who answered his questions and that Nhia along with Pheng and Nou gave him defendant Xiong's name as a suspect. Before Detective Bowen testified about statements made by members of the Ly family during the 2 April 1999 interview, the trial court gave a limiting instruction to the jury to "only consider [Detective Bowen's] testimony for the purpose of assessing the credibility of the witnesses that have already testified, and for no other purpose."

"It is well established that a witness' prior consistent statements may be admitted to corroborate the witness' sworn trial testimony but prior statements admitted for corroborative purposes may not be used as substantive evidence." *State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340 (2000). "However, the State may not introduce as corroboration prior statements that actually, directly contradict trial testimony." *Id.*

Here, Detective Bowen's testimony was admitted as corroborative testimony. Detective Bowen's testimony was not elicited to corroborate one particular family member's testimony, but was intended to corroborate the testimonies given by Nhia, Pheng and Nou. Although Nhia Ly testified at trial that he did not give defendant Xiong's name to Detective Bowen as a suspect on 2 April 1999, two other witnesses, Pheng Ly and Nou Ly, testified at trial that they gave defendant Xiong's name to Detective Bowen on 2 April 1999. Given the trial court's limiting instruction and the testimonies by Pheng Ly and Nou Ly, Detective Bowen's corroborative testimony regarding the 2 April 1999 interview with members of the Ly family was properly admitted. Accordingly, this assignment of error is overruled.

## II

### Sentencing Hearing

[6] Defendant Xiong argues he is entitled to a new sentencing hearing because he did not receive effective assistance of counsel at the sentencing hearing. We disagree.

Defendant Xiong's counsel stated the following during the sentencing hearing:

[Defense Counsel]: Your Honor, I've known some years this day would come, a hesitant prize fighter that's come into the ring one too many times, a lesson to be learned. And I'll have the weekend to reexamine what I'm to do in the future.

The Court: All right. Do you want to be heard on behalf of your client?

[Defense Counsel]: No, Your Honor, I do not.

"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006)

STATE v. LY

[189 N.C. App. 422 (2008)]

(quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)), *writ of cert. denied*, 166 L. Ed. 2d 116 (2006). "Generally, 'to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 534, 156 L. Ed. 2d 471, 493 (2003)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation omitted).

In *State v. Taylor*, 79 N.C. App. 635, 339 S.E.2d 859 (1986), the defense counsel refrained from speaking or presenting evidence during the sentencing hearing. This Court determined the defense counsel's decision, although "troublesome," did not "constitute[] deficient performance prejudicial to the defendant." *Id.* at 637, 339 S.E.2d at 861. The defense counsel's decision to remain silent was " 'strategy and trial tactics' properly left within the control of counsel." *Id.* at 638, 339 S.E.2d at 861.

Here, as in *Taylor*, defense counsel refrained from speaking or presenting evidence during defendant Xiong's sentencing hearing. Unlike the case of *State v. Davidson*, 77 N.C. App. 540, 335 S.E.2d 518 (1985), relied on by defendant Xiong, where the defense counsel not only refused to present evidence during the sentencing hearing but also made negative statements regarding the defendant, the statements made by defense counsel in the present case were not concerning defendant Xiong and did not prejudice him. Therefore, we are constrained to hold that defendant Xiong has not demonstrated that his counsel's performance was deficient or that he was prejudiced by said performance. Accordingly, this assignment of error is overruled.

Defendants' remaining assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) (2007) because defendants have failed to make any argument in support thereof.

NO ERROR.

Judge ELMORE concurs.

Judge WYNN concurs in a separate opinion.

WYNN, Judge, concurring in result only.

I concur with the majority opinion's holding that, under our previous precedents, we must affirm Defendants' convictions for first-

degree kidnapping and other charges. I write separately to point out that our recent case law fails to make any distinction between the crimes of first-degree kidnapping and robbery with a dangerous weapon in the context of armed home invasions.

As our Supreme Court articulated in *State v. Fulcher*,

It is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). In applying the test laid out in *Fulcher*, the Supreme Court further clarified,

The key question here is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to *greater danger* than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the *kind of danger and abuse* the kidnapping statute was designed to prevent.

*State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (emphasis added) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)). Thus, when faced with the type of armed-home invasion that occurred in the instant case, the critical issue is whether the restraint used by the defendants placed the victims in "greater danger" or subjected the victims to a particular "danger and abuse" aside from that which is inherent in robbery with a dangerous weapon.

In *State v. Beatty*, our Supreme Court found that "the binding and *kicking* [of the victim] were not inherent, inevitable parts of the robbery" and exposed the victim to a greater degree of danger than which is inherent in an armed robbery. 347 N.C. 555, 559, 495 S.E.2d 367, 368 (1998) (emphasis added). Likewise, in *Pigott*, the binding of the victim's hands and feet, "rendering him utterly helpless," was held to "constitute[] such additional restraint as to satisfy that element of

the kidnapping crime." 331 N.C. at 210, 415 S.E.2d at 561. However, the victim in *Pigott* was also shot in the head while bound, and was found to have died either from the gunshot wound or from smoke inhalation from the fire that the defendant subsequently set to the building. *Id.* at 202, 415 S.E.2d at 557.

In the instant case, this Court is bound by our prior holding in *State v. Morgan*, 183 N.C. App. 160, 645 S.E.2d 93 (2007). *See In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). In *Morgan*, this Court held that simply binding the victims, even in the absence of other physical violence, was sufficient to sustain a charge of first-degree kidnapping. 183 N.C. App. at 168-69, 645 S.E.2d at 99-100. Thus, on the question of restraint, this Court has extended the holdings of our Supreme Court to the point wherein any binding of the victims in an armed home invasion or robbery will constitute restraint sufficient to sustain a charge of kidnapping. I note the subsequent incongruity of outcomes in a case such as this, in which the victims were loosely bound and physically unharmed, but the defendants are nonetheless guilty of first-degree kidnapping, and a case such as *State v. Wade*, in which we vacated the charge of second-degree kidnapping because the dragging and severe beating of the victim—but without binding his hands or feet—was held to be "an inherent and integral part of either the robbery with a dangerous weapon or the assault." 181 N.C. App. 295, 302, 639 S.E.2d 82, 88 (2007). This incongruence needs resolution by our Supreme Court.