TYSON, Judge.
 

 *841
 

 *301
 
 Damon Mario Massey ("Defendant") appeals from a judgment entered after a jury found him guilty of first-degree kidnapping. We find no error.
 

 I.
 
 Background
 

 Jaz Automotive is a used car dealership and auto repair shop located in Charlotte. Approximately two weeks before the kidnapping at issue occurred on 26 October 2015, Defendant brought his white Chevrolet 3500 pickup truck to Jaz Automotive to have his power steering repaired. Shawn Kinard was one of the mechanics who worked on Defendant's truck. Kinard and mechanics replaced the power steering pump in the
 
 *302
 
 truck. Defendant's truck was operating normally when he picked it up from Jaz.
 

 Defendant returned to Jaz Automotive with a tow truck towing his pickup truck on Saturday, 24 October 2015. Defendant told Kinard his pickup truck would not start. Kinard testified, in part: "[Defendant] was insinuating as if it was something we had [done] when we replaced the power steering pump." Kinard asked Defendant to return on Monday to speak to one of the owners of Jaz Automotive.
 

 Defendant returned to Jaz Automotive the following Monday, 26 October 2015. Defendant had his truck towed to the front of Jaz's parking lot. Defendant entered the offices of Jaz Automotive and began speaking with Grady Lockhart ("Lockhart"), one of Jaz's owners. During this time, Kinard was working on another vehicle in the back part of Jaz's parking lot, away from where Defendant's truck was parked. Lockhart accompanied Defendant to speak with Kinard about the pickup truck.
 

 After Defendant spoke with Kinard about the pickup truck, Kinard told him to "give me a few minutes" and "I'll see what I can do." Defendant returned to his truck while Kinard continued working on another customer's vehicle.
 

 A short time later, Kinard looked up and saw Defendant walking towards him wearing a tactical vest and carrying a shotgun. Lockhart observed Defendant was carrying a shotgun and walking towards Kinard. Lockhart called 911. Kinard testified "[Defendant] walked up on me and he clicked the shotgun and he asked me, 'Do you have time to look at my truck now?' And so I proceeded to put my hands up and say, 'Let's go look at your truck.' " Kinard walked to the front of the lot where Defendant's picktup truck was parked, while Defendant pointed his shotgun at Kinard's back.
 

 Defendant told Kinard "If you make any sudden moves ... I'll put a bullet in your back right here." Kinard looked into the engine bay of Defendant's pickup truck, while Defendant pointed the shotgun at him. Defendant fired a shot at the ground, close to Kinard's feet. Defendant pumped the shotgun again, turned his back to Kinard and fired a shot into the air.
 

 While Defendant was turned away from him, Kinard ran out of the lot to a gas station located down the road and called 911. Defendant did not tell Kinard he was free to leave.
 

 Charlotte-Mecklenburg Police Sergeant Bryan Crum ("Sergeant Crum") was the first law enforcement officer to arrive on the scene.
 

 *303
 
 Sergeant Crum parked his vehicle a short distance from Jaz Automotive. Sergeant Crum observed "a guy walking through the parking lot carrying a shotgun, had a hat on and he was smoking a cigarette." Sergeant Crum later identified this person as Defendant. Sergeant Crum drew his firearm and ordered Defendant to put the shotgun down. Defendant placed the shotgun in the back seat of his pickup truck and was arrested. Sergeant Crum observed a gunshot mark in the asphalt pavement in front of Defendant's pickup truck. Police recovered the shotgun Defendant had wielded along
 
 *842
 
 with the tactical vest Defendant had been observed wearing. A sheathed machete was present on the back portion of the tactical vest.
 

 Defendant was charged with second-degree kidnapping, assault with a deadly weapon, assault by pointing a gun, discharging a firearm within a city limit, and first-degree kidnapping with the use or display of a firearm. Prior to trial, the State dismissed all charges except for first-degree kidnapping with a firearm.
 

 The State presented the testimony of Kinard, Lockhart, Sergeant Crum, and a 911 dispatcher. Defendant did not present any evidence. At the close of the evidence, Defendant made a motion to dismiss the charge of first-degree kidnapping, in part, for insufficient evidence that he had not released Kinard in a safe place. The trial court denied Defendant's motion to dismiss.
 

 The trial court submitted first-degree kidnapping to the jury, as well as the lesser-included offenses of second-degree kidnapping and false imprisonment.
 

 Following deliberation, the jury found Defendant guilty of first-degree kidnapping with the use or display of a firearm in a separate verdict. The trial court imposed an active presumptive term of 58 to 82 months for first-degree kidnapping. The minimum term of 58 months was increased to 72 months by the sentence enhancement provided by N.C. Gen. Stat. § 15A-1340.16A(c)(1) (2017) for Defendant's use or display of a firearm. Defendant was sentenced, in total, to an active term of 130 to 168 months. Defendant gave notice of appeal in open court.
 

 II.
 
 Jurisdiction
 

 Jurisdiction lies in this Court from final judgment of the superior court entered upon the jury's verdicts pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2017).
 

 III.
 
 Issue
 

 Defendant argues the trial court erred by denying his motion to dismiss the charge of first-degree kidnapping. Defendant contends the
 
 *304
 
 State failed to present substantial evidence he did not release Kinard into a safe place. We disagree.
 

 IV.
 
 Standard of Review
 

 "When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 Id
 
 . (citations omitted).
 

 "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence."
 
 State v. Davis
 
 ,
 
 130 N.C. App. 675
 
 , 679,
 
 505 S.E.2d 138
 
 , 141 (1998) (citations omitted). "Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal."
 
 State v. Olson
 
 ,
 
 330 N.C. 557
 
 , 564,
 
 411 S.E.2d 592
 
 , 595 (1992).
 

 V.
 
 Analysis
 

 "First-degree kidnapping is the unlawful confinement, restraint or removal from one place to another, of any other person 16 years of age or over without the consent of such person for the purpose of facilitating the commission of any felony or facilitating flight of any person following the commission of a felony."
 
 State v. Ly
 
 ,
 
 189 N.C. App. 422
 
 , 427,
 
 658 S.E.2d 300
 
 , 304 (2008) (citation omitted).
 

 Defendant does not dispute the State's evidence was sufficient to show he had kidnapped Kinard. Instead, Defendant challenges the sufficiency of the evidence to show first-degree, as opposed to second-degree, kidnapping. Second-degree kidnapping is elevated to first-degree kidnapping if the victim was not released in a safe place, was seriously injured, or was sexually assaulted.
 
 N.C. Gen. Stat. § 14-39
 
 (b) (2017). Defendant's indictment for first-degree kidnapping alleged Kinard was not released in a safe
 
 *843
 
 place. The State acknowledges in its brief no evidence tends to show Defendant injured or sexually assaulted Kinard.
 

 "[T]he General Assembly has neither" [statutorily] "defined nor given guidance as to the meaning of the term 'safe place' in relation to the offense of first degree kidnapping."
 
 State v. Sakobie
 
 ,
 
 157 N.C. App. 275
 
 , 282,
 
 579 S.E.2d 125
 
 , 130 (2003). "Further, the cases that have focused
 
 *305
 
 on whether or not the release of a victim was in a safe place have been decided ... on a case-by-case approach, relying on the particular facts of each case."
 
 Id.
 
 at 280,
 
 579 S.E.2d at 129
 
 (citations omitted).
 

 The Supreme Court of North Carolina has held that releasing a victim in a safe place "implies a conscious, willful action on the part of the defendant to assure that his victim is released in a place of safety."
 
 State v. Jerrett
 
 ,
 
 309 N.C. 239
 
 , 262,
 
 307 S.E.2d 339
 
 , 351 (1983). " '[R]elease' [in a safe place] inherently contemplates an affirmative or willful action on the part of a defendant."
 
 State v. Love
 
 ,
 
 177 N.C. App. 614
 
 , 626,
 
 630 S.E.2d 234
 
 , 242 (2006).
 

 "Mere relinquishment of dominion or control over the person is not sufficient to effectuate a release in a safe place."
 
 Ly
 
 ,
 
 189 N.C. App. at 428
 
 ,
 
 658 S.E.2d at
 
 305 (citing
 
 Love
 
 ,
 
 177 N.C. App. at 625
 
 ,
 
 630 S.E.2d at
 
 242 ).
 

 Defendant asserts he had "released" Kinard because he turned his back to him and fired a shot into the air. Defendant contends he affirmatively and voluntarily released Kinard because he did not "detain ... Kinard with any restraints or confine him in a locked location" and he "voluntarily turned his back and allowed ... Kinard to run away."
 

 Defendant cites this Court's opinion in
 
 State v. Leak
 
 ,
 
 174 N.C. App. 628
 
 ,
 
 621 S.E.2d 341
 
 ,
 
 2005 WL 3046527
 
 (2005) (unpublished), to support his argument Kinard was released in a safe place. In
 
 Leak
 
 , two individuals robbed a Wendy's restaurant at gunpoint.
 
 Leak
 
 ,
 
 2005 WL 3046527
 
 , at *1. During the robbery, the robbers forced three Wendy's employees to enter a walk-in freezer.
 

 Id.
 

 The defendant was one of the robbers, and he was charged, in part, with two counts of first-degree kidnapping.
 

 Id.
 

 At trial, the defendant filed a motion to dismiss the charges of first-degree kidnapping based upon a lack of sufficient evidence that he did not release the victims in a safe place.
 
 Id.
 
 at *2. The trial court denied the motion to dismiss.
 
 Id.
 

 On appeal, this Court held all the evidence showed the victims were released in a safe place, because:
 

 Here, the victims were released at the place where they worked. The freezer could be opened from the inside and the employees walked out of the freezer on their own within minutes after ensuring the perpetrators had left the building. They awaited the arrival of the police, who had been called by the store manager.
 

 Id.
 
 at *4.
 

 *306
 
 The facts in
 
 Leak
 
 are clearly distinguishable from the State's evidence presented here. Defendant did not leave Kinard behind at the scene of the kidnapping. Instead, Kinard ran away when he saw he had an opportunity to do so. Viewed in the light most favorable to the State, a reasonable juror could find Kinard ran away to escape and that Defendant did not release him.
 

 Defendant also cites this Court's opinion in
 
 State v. White
 
 ,
 
 127 N.C. App. 565
 
 ,
 
 492 S.E.2d 48
 
 (1997), to support his argument. In
 
 White
 
 , the defendant and an accomplice abducted the victim and agreed to release the victim "if she agreed to tell authorities she had not seen her assailants."
 
 White
 
 ,
 
 127 N.C. App. at 568
 
 ,
 
 492 S.E.2d at 50
 
 . The defendant and his accomplice drove the victim to a motel and dropped her off at the motel parking lot in the middle of the afternoon.
 

 Id.
 

 The abductors also gave the victim change so she could use a pay phone.
 

 Id.
 

 This Court held "all the evidence established that the victim was released in a safe place."
 
 Id.
 
 at 573,
 
 492 S.E.2d at 53
 
 . In
 
 White
 
 , there was no evidence to indicate the victim had escaped, in contrast to the instant case.
 
 See
 
 id.
 

 The evidence in
 
 White
 
 indisputably showed her captors released her.
 

 Id.
 

 The issue in
 
 White
 
 was whether the victim was
 
 *844
 
 released
 
 in a safe place
 
 at a motel parking lot, not whether she was released at all.
 

 Id.
 

 Viewed in the light most favorable to the State, the evidence does not show Defendant "relinquished dominion and control over" Kinard to "effectuate [his] release in a safe place."
 
 See
 

 Ly
 
 ,
 
 189 N.C. App. at 428
 
 ,
 
 658 S.E.2d at 305
 
 .
 

 Defendant held Kinard at gunpoint and threatened to shoot him in the back if Kinard did not repair his truck. While Kinard was looking at the engine bay of Defendant's pickup truck, Defendant fired a shot into the asphalt close to Kinard's feet. Defendant then turned his back to Kinard, pumped another shell into the chamber, and fired a second shot into the air. When Defendant turned away, Kinard seized the opportunity to run away. Defendant never told or indicated to Kinard that he was free to leave, nor gave any indication that he would not shoot Kinard if he ran away.
 

 The mere act of an armed kidnapper turning his back, without more, is not "a conscious, willful action on the part of the [kidnapper] to assure that his victim is released in a place of safety."
 
 See
 

 Jerrett
 
 ,
 
 309 N.C. at 262
 
 ,
 
 307 S.E.2d at 351
 
 . Kinard's seizing of the opportunity to flee from Defendant is not "an affirmative or willful action on the part
 
 *307
 
 of [Defendant]," to release Kinard.
 
 See
 

 Love,
 

 177 N.C. App. at 625
 
 ,
 
 630 S.E.2d at 242
 
 .
 

 Although Defendant did not pursue Kinard or fire another shot at him as he ran away, this failure to pursue or attempt to re-establish control does not convert Kinard's escape into a release in a safe place to support dismissal of the first-degree kidnapping charge.
 
 See
 

 State v. Cole
 
 ,
 
 199 N.C. App. 151
 
 , 159,
 
 681 S.E.2d 423
 
 , 429 (2009) ("[Defendant's] failure to chase or do any additional harm to [victim] does not convert her escape into a release"),
 
 writ denied, review denied
 
 ,
 
 363 N.C. 658
 
 ,
 
 686 S.E.2d 679
 
 (2009).
 

 In
 
 Jerrett
 
 , our Supreme Court noted the dichotomy which exists between a voluntary
 
 release
 
 of a victim by a defendant and an
 
 escape
 
 by a victim:
 

 [I]t is difficult to envision a situation when a release of the victim by the defendant could be other than voluntary. It seems the defendant would either release the victim voluntarily, or the victim would reach a place of safety by effecting an escape or by being rescued.
 

 309 N.C. at 262
 
 ,
 
 307 S.E.2d at 351
 
 (emphasis omitted). The defendant in
 
 Jerrett
 
 kidnapped his victim at gunpoint and forced her to drive him in her car.
 
 Id
 
 at 263,
 
 307 S.E.2d at 352
 
 . When the victim indicated the car was low on gas, the defendant permitted her to stop at a gas station.
 

 Id.
 

 The defendant allowed the victim to go inside the gas station, while he followed several feet behind her and carried his pistol underneath his shirt within his waistband.
 

 Id.
 

 The victim walked past a police officer, who was inside the gas station, and told the officer in a low voice that the defendant had a gun.
 

 Id.
 

 The victim walked to the back of the gas station and locked herself inside a storage room.
 

 Id.
 

 The defendant did not attempt to stop the victim while they were both inside of the gas station.
 
 Id
 
 . The officer confronted and arrested the defendant.
 

 Id.
 

 Our Supreme Court held that the evidence was sufficient to submit the theory of first-degree kidnapping to the jury, and stated:
 

 Although this evidence presents a close question as to whether defendant released [the victim] in a safe place, we are of the opinion that it was sufficient to permit the jury to reasonably infer that [victim] escaped or that she was rescued by the presence and intervention of the police officer. Conversely, this evidence would have permitted
 
 *308
 
 the jury to reasonably infer that defendant released [the victim] in a safe place. It was for the jury to resolve the conflicting inferences arising from this evidence.
 

 Id.
 

 As in
 
 Jerrett,
 
 the evidence presented here was sufficient to permit the jury to reasonably find that Kinard escaped when Defendant turned his attention away from Kinard.
 
 See
 

 id
 
 . Viewed in the light most favorable to the State, substantial evidence supports the jury's conclusion that Defendant did not release Kinard in a safe place to convict him of first-degree kidnapping.
 

 *845
 
 The trial court instructed the jury on first-degree kidnapping, and the lesser-included offences of second-degree kidnapping and false imprisonment. After being properly instructed, the jury weighed and resolved conflicts in the evidence to reach its verdict. Defendant has failed to show the trial court erred by denying his motion to dismiss. Defendant's arguments are overruled.
 

 VI.
 
 Conclusion
 

 Viewed in the light most favorable to the State, sufficient evidence was admitted to submit the charge of first-degree kidnapping to the jury. The trial court also submitted the lesser-included offenses of second-degree kidnapping and false imprisonment for the jury to weigh the evidence. Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no error in the trial court's denial of Defendant's motion to dismiss, the jury's verdicts, or the judgment entered thereon.
 
 It is so ordered.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge BERGER concur.