STATE OF NORTH CAROLINA v. TOBY OFIELD LOVE

STATE OF NORTH CAROLINA v. RONNIE LOVE

STATE OF NORTH CAROLINA v. TINO LOVE

No. COA05-1237

(Filed 6 June 2006)

**1. Appeal and Error— preservation of issues—joint motion to adopt argument as to all defendants**

Defendants' joint motion to adopt codefendants' arguments on appeal under N.C. R. App. P. 2 is allowed and each issue is addressed as to all defendants.

**2. Criminal Law— joinder of defendants—abuse of discretion standard**

The trial court did not abuse its discretion in a robbery with a firearm, felonious breaking or entering, and multiple first-degree kidnapping case by granting the State's motion for joinder over defendants' objections, because: (1) the State did not stand by and rely on the testimony of the respective defendants to convict them, but instead offered plenary evidence of the three defendants' guilt; and (2) the conflict between closing arguments for defendants was not of such a magnitude when considered in the context of the other evidence that the jury was likely to infer from that conflict alone that all three were guilty.

**3. Jury— selection—deviation from mandatory statutory guidelines—failure to show bias**

The trial court did not commit prejudicial error in a robbery with a firearm, felonious breaking or entering, and multiple first-degree kidnapping case by imposing a jury selection procedure which deviated from mandatory statutory .guidelines under N.C.G.S. § 15A-1214, because: (1) although defendants assert a claim of prejudice, they fail to show jury bias, the inability to question prospective jurors, inability to assert peremptory challenges, or any other defect which had the likelihood to affect the outcome of the trial; and (2) not a single defendant used each and every one of his peremptory challenges, and defendants failed to do anything more than make a blanket assertion that statutory violation of mandated jury selection procedures prejudiced them.

**4. Witnesses— motion to sequester—failure to show abuse of discretion**

The trial court did not err in a robbery with a firearm, felonious breaking or entering, and multiple first-degree kidnapping case by failing to grant defendants' motion to sequester the State's witnesses, because defendants failed to bring forth any evidence that the trial court's judgment was so arbitrary that it would constitute an abuse of discretion.

**5. Constitutional Law— right to fair trial—impartiality—redaction of defendants' statements**

The trial court did not abandon its role of impartiality by personally redacting defendants' statements for introduction at trial and did not admit the statements in violation of *Bruton v. United States*, 391 U.S. 123 (1968), because: (1) the trial court went through

each and every statement with the State and defendants; and (2) the trial court instructed both parties to object to any portion that they felt was improperly included or excluded.

**6. Kidnapping— second-degree—failure to submit instruction— not released in a safe place**

There was no evidence in a first-degree kidnapping case that the victim were released in a safe place so as to require the trial court to submit the charge of second-degree kidnapping to the jury, because: (1) defendants bound and gagged all four victims, defendants subsequently bound all four victims together, defendants checked the bindings of the victims before departure, and defendants placed further bindings on the victims and stated they would return; (2) there was no affirmative or willful action on the part of defendants to release the victims, and although defendants may have physically left the premises, they left the victims with a constructive presence through their active intimidation; and (3) an instruction on this lesser-included offense requires an affirmative action other than the mere departing of the premises.

**7. Sentencing— mitigating factors—balancing**

The trial court did not abuse its discretion in a robbery with a firearm, felonious breaking or entering, and multiple first-degree kidnapping case by allegedly failing to properly consider mitigating factors, including that defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer at an early stage of the criminal process, because the trial court considered this mitigating factor but was unpersuaded by any argument that the factor was not outweighed by numerous aggravating factors.

**8. Sentencing— aggravating factors—motion to dismiss—waiver**

The trial court did not err in a robbery with a firearm, felonious breaking or entering, and multiple first-degree kidnapping case by denying defendants' motion to dismiss the aggravating factor that defendant joined with more than one other person in committing the offense of first-degree kidnapping and that defendant was not charged with committing a conspiracy, where defendants stipulated this factor and also waived a jury trial on this issue.

**9. Appeal and Error— preservation of issues—failure to object or make motion at trial**

Although defendant contends the trial judge erred in a robbery with a firearm, felonious breaking or entering, and multiple first-

degree kidnapping case by failing to recuse herself based on alleged bias against defense counsel, this assignment of error is overruled because: (1) defendant did not seek recusal of the trial judge from the case under the standards for recusal or disqualification of a judge in a criminal trial set out in N.C.G.S. § 15A-1223 and Canon 3(C)(1) of the Code of Judicial Conduct; (2) the question was not properly preserved for appeal since there was no request, objection or motion made; and (3) defendant presented no evidence of bias, prejudice, or impartiality on the part of the trial judge.

**10. Constitutional Law— right to confrontation—failure to meet burden to show usefulness of presence**

The trial court did not err in a robbery with a firearm, felonious breaking or entering, and multiple first-degree kidnapping case by making findings as to mitigating factors when defendant was not present in the courtroom, because: (1) the findings as to the mitigating factors in no way changed the sentence which had previously been given to defendant; and (2) defendant failed to meet his burden requiring him to show the usefulness of his presence at the time the findings were made as to these mitigating factors.

Appeal by defendants from judgments entered 16 December 2004 by Judge Evelyn W. Hill in Alamance County Superior Court. Heard in the Court of Appeals 13 April 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Iain M. Stauffer, Assistant Attorney General Judith Tillman, and Special Deputy Attorney General Mabel Y. Bullock, for the State.*

*Peter Wood for Toby Love defendant appellant.*

*Irving Joyner for Ronnie Love defendant appellant.*

*Cheshire Parker Schneider Bryan & Vitale, by John Keating Wiles, for Tino Love defendant appellant.*

McCULLOUGH, Judge.

Defendants appeal from judgments entered after a jury verdict of guilty of four counts of first-degree kidnapping, one count of robbery with a firearm, and one count of felonious breaking or entering charges. We find no error.

FACTS

An Alamance County grand jury indicted defendants on four counts of first-degree kidnapping, assault on a child under the age of 12, rob-

bery with a dangerous weapon, breaking and entering, larceny, possession of stolen goods, and certain aggravating factors. On 3 December 2004, the State made a motion to join Toby Love, Tino Love, and Ronnie Love as defendants which was allowed by the trial judge. The case against the three defendants proceeded to trial on 6 December 2004. Defendants filed a motion to sequester the State's witnesses which was adopted at trial by all defendants and subsequently denied by the trial judge. After granting the motion for joinder of all issues and all defendants, the trial judge addressed the issue of redaction of each defendants' statement. In doing such, the judge went line by line through each defendant's statement and informed all parties what should be deleted allowing them an opportunity to object after each suggested redaction, resulting in a redacted version of all three defendants' statements. ·

Before jury selection ensued, the trial judge informed defendants of the procedure for *voir dire* after the State passed the panel to defendants as follows:

The State passes 12 to you. You question. You excuse any, it goes back to the State. State fills up those seats. Passes 12 to you. You excuse any, it goes back to the State. Where there's 12 that you've passed and the State has passed, then it goes to Ms. Harris. We'll keep doing that until we're done and we're going to have to keep up with it because I probably will have some trouble remembering how many each person gets to question.

The State presented evidence at trial tending to show the following: On 2 June 2004, the Petersen family, Martin ("Mr. Petersen"), Tammy ("Mrs. Petersen"), and their sons Matt and Grant were at their home in Burlington, North Carolina. Matt was the first family member to leave the house for work that morning, and as he stepped out of the door of the house, he noticed defendants leaning against the wall of his house. One of the defendants immediately pointed a gun in Matt's face, pushed him on the ground outside of his house, bound his hands with tape, and placed tape over his mouth. While Matt was being bound and gagged, two of the men ran into the house while the other two men remained with Matt and later took him inside. Upstairs in the house, one of the men wearing baggy pants, a wig, and face paint approached Mr. Petersen pointing a gun at his face and was followed by a second man who also pointed his gun in Mr. Petersen's face. While Mr. Petersen was held at gunpoint upstairs, Matt was forcibly pushed up the stairs with a gun in his back. The armed men then forcibly pushed Mr. Petersen's face into the couch where they bound his hands and ankles with duct tape.

Mrs. Petersen was then directed to sit on the couch next to her husband at which time duct tape was placed over her mouth, around her head, and around her hands which were placed behind her back. Mrs. Petersen was then pulled off the couch and placed in the same position as her husband.

While the armed men were binding and gagging Mr. and Mrs. Petersen, another armed man led Matt down the hall to wake his younger brother Grant. The men then wrapped duct tape around Grant's head and hands and placed him beside Mrs. Petersen. Matt was then blindfolded, placed in a chair and his hands and feet were bound. The intruders then asked Mr. Petersen where he kept his money and he directed them to his wallet containing $500.00. The men then forced Mr. Petersen downstairs and directed him to open two safes. The first safe contained a 20-gauge shotgun belonging to Matt which was taken by one of the intruders who stated, "I'm going to shell up and go upstairs and take care of some business. If you don't open the other safe in five minutes I'm going to come back down and take care of some more." Two armed intruders remained downstairs with Mr. Petersen and one held a gun to the back of his head and ordered him to open the second safe. Mrs. Petersen testified that while her husband was downstairs she heard someone come upstairs and felt them touch her breast.

After both safes had been opened, the intruders inquired as to where the rest of his money was kept and Mr. Petersen responded that he kept his money in the bank. Mr. Petersen was then taken back upstairs at gunpoint where he showed the intruders where he kept another $400.00. Mr. Petersen was then returned to the couch where his hands and ankles were re-bound, his arms were taped to his chest, and tape was placed around his face and mouth. The intruders directed each of the members of the Petersen family to sit in dining room chairs where they proceeded to bind each person directly to the chair. After binding each person to their chair, the intruders placed the chairs of Mr. and Mrs. Petersen back to back as well as the chairs of Matt and Grant back to back and bound the chairs together and then placed a plastic bag over Matt's head. One of the intruders asked Mr. Petersen for the keys to his van which Mr. Petersen gave him and the intruders proceeded to remove items from the Peterson home. Before leaving, the armed men rechecked the bindings and further wrapped duct tape around all four dining room chairs several times in order to bind the entire family together. One of the intruders remained in the home with the family pointing a gun at them until the Petersen's van was ready to leave, and as he left the home he stated, "we'll be back."

**STATE v. LOVE**

[177 N.C. App. 614 (2006)]

Once the intruders were gone, Mr. Petersen was able to chew through his bindings until he could break them loose allowing him to release himself and the rest of his family members. It was determined that the intruders had stolen a shotgun, cash, Mrs. Petersen's jewelry, a video recorder, cell phone, digital camera, memory card, surround sound system, and other items. On 5 June 2004, defendant Ronnie Love gave officers at the Alamance County Sheriff's Department a statement which implicated himself, defendants Tino and Toby Love, and Willie Moore in the Petersen home invasion. A search was thereafter conducted of the property where defendant Tino Love was residing which revealed wig pieces, face cream, a wig, blue and white bandana, and other miscellaneous items. After the search was conducted, Tino Love was taken to the Alamance County Sheriff's Department where he gave a taped statement implicating defendants Ronnie and Toby Love and Willie Moore in the home invasion. On 7 June 2004, defendant Toby Love gave a statement to police officers which implicated Willie Moore and defendants Ronnie and Tino Love in the Petersen home invasion.

One of defendants' girlfriends turned over surround sound speakers, video tape, and film from a camera to police. Subsequently her house was searched revealing assorted gold and silver jewelry, two-way radios, and two handguns. During trial the seized property was identified and admitted into evidence showing that some of the property bore the initials of Mr. Petersen. Certain property and jewelry were identified by Mr. and Mrs. Petersen as items that were taken from their home.

At the conclusion of the evidence, defendants made a motion to submit the charge of second-degree kidnapping to the jury on the basis that the victims were released into a safe place. The motion to submit the lesser included offense to the jury was denied by the trial judge citing the Webster dictionary definition of release as " 'one, to set free from restraint, confinement for servitude; to let go.' " The jury returned guilty verdicts as to all defendants on the charges of four counts of first-degree kidnapping, robbery with a firearm, and felonious breaking or entering.

After the jury returned guilty verdicts, the trial judge proceeded to the sentencing phase of the trial and prepared for jury consideration of aggravating factors. In preparing for the jury consideration all three defendants stipulated that they acted in concert with the other defendants and were not charged with conspiracy and waived a jury trial on that issue. The trial judge then went on to the consideration of mitigating factors and sentencing. In considering the offering of a confession as a mitigating factor, the trial judge stated:

I'd like to point out that you gave the most self-serving statements you could have given. You said the guns weren't loaded. You said all the things that you thought might help you.

And if you don't think they would have found you without that statement then you're a bigger fool than I think you are because the property was showing up at your girlfriends' houses, your daddy knew something was going on. It wouldn't have been any time at all before they would have found you, tested that physical evidence for fingerprints and you still would have been here. But I'm going to give you credit for making that statement. I'm going to find that you did volunteer.

The trial judge then found that the aggravating factors outweighed the mitigating factors and sentenced defendant Tino Love, who was then removed from the courtroom. While sentencing the other two defendants, the trial judge entered findings of mitigating factors as to defendant Tino Love. Defendants then gave oral notice of appeal.

Defendants now appeal.

## ANALYSIS

[1] On 28 March 2006 all three defendants made a joint motion to adopt the codefendants' arguments on appeal pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure. This Court can find no reason for disallowance and therefore we address each applicable issue in this opinion as to all defendants.

### I

[2] We first address defendants' contention on appeal that the trial court erred in granting the State's motion for joinder over defendants' objections. We disagree.

The decision of whether to grant or deny a motion for joinder of codefendants lies within the sound discretion of the trial judge and that decision will not be disturbed absent a showing that the "joinder deprived the defendant of a fair trial." *State v. Golphin*, 352 N.C. 364, 399, 533 S.E.2d 168, 195 (2000), *certs. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001), *cert. denied*, 358 N.C. 157, 593 S.E.2d 84 (2004). The law is clear in stating that "the presence of antagonistic defenses does not, standing alone, warrant severance." *Id.* at 400, 533 S.E.2d at 195. Rather, " 'the test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial.' " *State v. Lowery*, 318 N.C. 54, 59, 347 S.E.2d 729, 734 (1986) (citation omitted).

In determining whether the antagonistic positions of the defendants were such that joinder amounted to prejudice, this Court must look to whether the trial court became an evidentiary battlefield "where the state simply stands by and witnesses 'a combat in which the defendants [attempt] to destroy each other.' " *State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979) (citation omitted), *cert. denied*, 446 U.S. 929, 64 L. Ed. 2d 282 (1980). In applying this test to facts, the courts have looked to whether the State relied on the codefendants' statements alone to prove their case or whether there was evidence independent of such statements. *Golphin*, 352 N.C. at 400-01, 533 S.E.2d at 195-96.

In the instant case, we conclude that defendants were not denied a fair trial by the joinder notwithstanding the conflicts in their testimony. This is not a case where the State simply stood by and relied on the testimony of the respective defendants to convict them. The State itself offered plenary evidence of the three defendants' guilt. On appeal defendants attempt to prove prejudice by pointing to conflicting statements made by each defendant's counsel in closing statements. However, the conflict between closing arguments for defendants was not of such a magnitude when considered in the context of other evidence that the jury was likely to infer from that conflict alone that all three were guilty.

Therefore, the corresponding assignments of error are overruled.

## II

**[3]** We next address defendants' contention on appeal that the trial judge erred in imposing a jury selection procedure which deviated from mandatory statutory guidelines under N.C. Gen. Stat. § 15A-1214. We disagree.

The North Carolina General Statutes set forth a mandatory procedure for jury selection to be followed by the trial court in § 15A-1214:

(d) The prosecutor **must** conduct his examination of the first 12 jurors seated and make his challenges for cause and exercise his peremptory challenges. If the judge allows a challenge for cause, or if a peremptory challenge is exercised, the clerk must immediately call a replacement into the box. When the prosecutor is satisfied with the 12 in the box, they must then be tendered to the defendant. Until the prosecutor indicates his satisfaction, he may make a challenge for cause or exercise a peremptory challenge to strike any juror, whether an original or replacement juror.

(e) Each defendant **must** then conduct his examination of the jurors tendered him, making his challenges for cause and his peremptory challenges. If a juror is excused, no replacement may be called until all defendants have indicated satisfaction with those remaining, at which time the clerk must call replacements for the jurors excused. The judge in his discretion must determine order of examination among multiple defendants.

N.C. Gen. Stat. § 15A-1214(d)-(e) (2005) (emphasis added). Defendants now argue that the trial court deviated from these procedures by alternating between the State and each defendant rather than each defendant questioning and passing on the jury panel before it was sent back to the State. However, defendants did not object to these deviations at trial. Nonetheless, " 'when a trial court acts contrary to a statutory mandate . . . the right to appeal the court's action is preserved.' " *State v. Jaynes*, 353 N.C. 534, 544-45, 549 S.E.2d 179, 189 (2001) (citation omitted), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 220 (2002). Therefore, defendants' statutory error is preserved for appellate review by this Court.

It is evident from the record on appeal that the trial court violated the mandatory statutory procedure for jury selection. However, a new trial does not necessarily follow a violation of statutory mandate. *State v. Garcia*, 358 N.C. 382, 406, 597 S.E.2d 724, 742-43 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). Defendants must show not only that a statutory violation occurred, but also that they were prejudiced by this violation. *Id.*

The purpose underlying jury selection is to ensure the empanelment of an "impartial and unbiased jury." *Id.* at 407, 597 S.E.2d at 743. Defendants assert a claim of prejudice by the jury selection procedure imposed; however, they fail to show jury bias, the inability to question prospective jurors, inability to assert peremptory challenges, nor any other defect which had the likelihood to affect the outcome of the trial. Instead, the gravamen of defendants' argument is that they were prejudiced by an inability to engage in equal amounts of "face time" with the prospective jurors and were thereby deprived of an equal opportunity to create a rapport with the jurors.

Moreover, this Court has looked, in similar cases, to whether all peremptory challenges were exercised by the defendant in determining prejudice. *State v. Lawrence*, 352 N.C. 1, 12-13, 530 S.E.2d 807, 814-15 (2000), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001). If peremptory challenges are unused and the defendant makes no challenge for

cause, then he cannot say he was forced to accept an undesirable juror. *Id.* at 13, 530 S.E.2d at 815.

In the instant case, not a single defendant used each and every one of their peremptory challenges. Further, they have failed to do anything more than make a blanket assertion that statutory violation of mandated jury selection procedures prejudiced them. Therefore, the corresponding assignments of error are overruled.

## III

**[4]** We now address defendants' contention that the trial court erred in failing to grant defendants' motion to sequester the State's witnesses. We disagree.

" 'A ruling on a motion to sequester witnesses rests within the sound discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 43, 530 S.E.2d 281, 286 (2000) (citation omitted), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001), *disc. review denied*, 360 N.C. 72, 623 S.E.2d 779 (2005). Defendants have failed to bring forth any evidence of indicia that the trial court's judgment was so arbitrary that it would constitute an abuse of discretion. Therefore, the corresponding assignments of error are overruled.

## IV

**[5]** Next, defendants contend on appeal that the trial judge erred in abandoning her role of impartiality where she personally redacted defendants' statements for introduction at trial and admitted the statements in violation of *Bruton v. United States.* We disagree.

"Every person charged with crime has an absolute right to a fair trial. By this it is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951).

In *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968), the Supreme Court held that a defendant's rights under the Confrontation Clause are violated when his nontestifying codefendant's confession is introduced at their joint trial, and the confession names the defendant as a participant in the crime. In the instant case, the trial judge, in accordance with the progeny of *Bruton*, took the statements of the three defendants and redacted portions of the statements which were inadmissible at trial. Defendants failed to raise any objection to

the trial judge's decision to personally redact the statements at trial and now argue that this action was a violation of the requirement of absolute impartiality.

However, the trial judge went through each and every statement with the State and defendants, instructing them to object to any portion that they felt was improperly included or excluded. It is evident from the transcript that during this pretrial phase, the trial judge conducted the proceeding in an impartial manner and made every effort to ensure that defendants received a fair trial. Therefore, the corresponding assignments of error are overruled.

## V

[6] Defendants further contend that the trial court erred in failing to submit the charge of second-degree kidnapping to the jury where there was evidence that the victims were released into a safe place. We disagree.

"The law is well settled that the trial court must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury could find that defendant committed the lesser included offense." *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984). " 'The determining factor is the presence of evidence to support a conviction of the lesser included offense.' " *State v. Kyle*, 333 N.C. 687, 703, 430 S.E.2d 412, 421 (1993) (citation omitted).

The North Carolina General Statutes set forth two degrees of the offense of kidnapping, in which second-degree kidnapping is considered a lesser included offense:

If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was **released** in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C. Gen. Stat. § 14-39(b) (2005).

On appeal defendants contend that there was evidence that the victims were "released" into a safe place requiring the submission of the offense of second-degree kidnapping to the jury. Defendants argue that the victims were "released" into a safe place when they were left bound and gagged in their home by defendants on a theory that "release"

merely requires a relinquishment of dominion or control over a person. However, this Court is in no way persuaded by this argument and holds that "release" inherently contemplates an affirmative or willful action on the part of a defendant.

In the instant case, defendants bound each of their four victims to chairs and gagged them. After binding each individual to a chair, they bound the mother and father together as well as the two sons. Defendants subsequently bound all four chairs and victims together. The record also reveals that defendants checked the bindings of the victims before departure, placed further bindings on the victims, and stated that they would return. We find no affirmative or willful action on the part of defendants to release the victims, in fact defendants may have physically left the premises, but through their active intimidation, they left the victims with a constructive presence. An instruction on the lesser included offense of second-degree kidnapping certainly requires an affirmative action other than the mere departing of a premise. We find no merit in defendants' contention on appeal and, therefore, the corresponding assignments of error are overruled.

## VI

**[7]** We next address defendants' contention that the trial court erred in failing to properly consider mitigating factors. We disagree.

Although the trial court must consider all statutory aggravating and mitigating factors that are supported by the evidence, the judge weighs the credibility of the evidence and determines by the preponderance of the evidence whether such factors exist. *See State v. Jones*, 314 N.C. 644, 336 S.E.2d 385 (1985). It is also well established that " '[t]he balancing of the properly found factors in aggravation and mitigation is left to the sound discretion of the trial judge.' " *State v. Baldwin*, 139 N.C. App. 65, 70, 532 S.E.2d 808, 812 (citation omitted), *disc. review improvidently allowed*, 354 N.C. 208, 552 S.E.2d 141 (2001). The trial court's discretionary ruling on sentencing factors " 'will be upset only upon a showing that it could not have been the result of a reasoned decision.' " *State v. Canty*, 321 N.C. 520, 524, 364 S.E.2d 410, 413 (1988) (citation omitted).

In the instant case, defendants contend that the trial judge failed to properly consider that defendants voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer at an early stage of the criminal process as a mitigating factor. However, this contention has no merit. It is clear from the record that

the trial judge considered this as a mitigating factor;[1] however, she was unpersuaded by any argument that this mitigating factor was not outweighed by numerous aggravating factors. It cannot be said that this was an abuse of discretion and, therefore, the corresponding assignments of error are overruled.

## VII

**[8]** Moreover, defendants contend that the trial court erred in denying the motion to dismiss aggravating factors. We find no merit in this contention.

The argument by defendant is an attempt to escape stipulation and waiver of jury trial as to certain aggravating factors by couching the argument under the guise of a properly granted motion to dismiss. Defendants' counsel made a bare assertion for a motion to dismiss all aggravating factors at the trial level, however, no further arguments were made. On appeal, defendants only address the aggravating factor "that the defendant joined with more than one other person in committing the offense of first degree kidnapping . . . and that the defendant was not charged with committing a conspiracy."

Shortly after the trial court's denial of the motions to dismiss, the trial judge began reviewing the verdict sheet to be submitted to the jury for a determination of the existence of certain aggravating factors. One such aggravating factor was "that the defendant joined with more than one other person in committing the offense of first degree kidnapping . . . and that the defendant was not charged with committing a conspiracy." During this discussion, counsel for each of the three defendants stated that they stipulated to the existence of the aforementioned aggravating factor and further waived a jury trial on the issue. Where this issue was waived at the trial court level, we decline to now address it on appeal. Therefore, the corresponding assignments of error are overruled.

## VIII

**[9]** Defendant Toby Love further argues that the trial judge erred in failing to recuse herself based on her bias against his counsel, Craig Thompson. This issue is not properly before the Court on appeal.

Defendant did not seek recusal of the trial judge from his case under the standards for recusal or disqualification of a judge in a crimi-

---

1. After a discussion regarding defendants' statements, the trial judge stated "I'm going to give you credit for that statement. I'm going to find that you did volunteer."

nal trial set out in section 15A-1223 of the North Carolina General Statutes and Canon 3(C)(1) of the Code of Judicial Conduct. N.C. Gen. Stat. § 15A-1223(b) (2005) (providing that "[a] judge, on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is: (1) Prejudiced against the moving party or in favor of the adverse party"); Canon 3(C) of the Code of Judicial Conduct, (providing that "[o]n a motion of any party, a judge should disqualify himself in a proceeding in which his impartiality may reasonably be questioned . . ."). There was no request, objection or motion made by defendant at trial and therefore the question was not properly preserved for appeal. N.C. R. App. P. 10(b)(1) (2005). Furthermore, on appeal defendant has presented no evidence whatsoever of bias, prejudice or impartiality on the part of the trial judge. Therefore, this assignment of error is overruled.

## IX

**[10]** Last, we address defendant Tino Love's contention that the trial court erred in making findings as to mitigating factors when defendant was not present in the courtroom. We disagree.

"The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution 'guarantees an accused the right to be present in person at every stage of his trial.' " *State v. Daniels*, 337 N.C. 243, 256, 446 S.E.2d 298, 307 (1994) (citation omitted), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him. *State v. Chapman*, 342 N.C. 330, 337-38, 464 S.E.2d 661, 665 (1995), *cert. denied*, 518 U.S. 1023, 135 L. Ed. 2d 1077 (1996). Moreover, "[d]efendant bears the burden 'to show the usefulness of his presence in order to prove a violation of his right to presence.' " *State v. Murillo*, 349 N.C. 573, 596, 509 S.E.2d 752, 766 (1998) (citation omitted), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999).

In the *instant case*, the trial judge sentenced defendant Tino Love first. Having been found guilty by a jury on the charges and upon finding that the aggravating factors outweighed the mitigating factors, defendant Tino Love was sentenced and removed from the courtroom. The trial judge proceeded to sentence defendants Ronnie and Toby Love, and *during this time made specific findings as to whether certain* mitigating factors were or were not supported by the evidence. The trial judge stated, "With regard to Tino Love, even though he's not here, 9B

was submitted . . . 11A was found. 15 was not found. 18 was not found and 19 was not found as not being supported by the evidence." The findings as to these mitigating factors in no way changed the sentence which had previously been given to defendant Tino Love. On appeal, defendant has failed to meet his burden requiring him to show the usefulness of his presence at the time the findings were made as to these mitigating factors and, therefore, this assignment of error is overruled.

Accordingly, for the reasons stated above, we conclude that the trial court did not commit error. Furthermore, this Court finds no merit in the remaining assignments of error and they are therefore overruled.

No prejudicial error.

Judges CALABRIA and STEELMAN concur.