An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-382

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

v.                                      Wake County
                                        Nos. 12 CRS 5924, 204029,
                                        206399
JOSEPH DARNELL JOHNSON


Appeal by defendant from judgment entered 18 October 2012 by Judge Paul G. Gessner in Wake County Superior Court. Heard in the Court of Appeals 8 October 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General David W. Boone, for the State.*
>
> *David L. Neal for defendant-appellant.*


McCULLOUGH, Judge.


Joseph Darnell Johnson ("defendant") appeals from his convictions for common law robbery, conspiracy to commit common law robbery, and attaining the status of an habitual felon. For the following reasons, we find no error.

## I. Background

This case arises as a result of a robbery at the King's Motel on South Wilmington Street in Raleigh during the early morning hours of 22 February 2012.

Prior to the robbery, defendant and Bryan Rydzewski spent much of 21 February 2012 together in Raleigh panhandling, drinking alcohol, and getting high on crack cocaine. After splitting up from Rydzewski at some point during the day, defendant met back up with Rydzewski shortly after midnight on 22 February 2012. At that point, Rydzewski was joined by Tyrone Cox on a park bench. There defendant, Rydzewski, and Cox smoked crack cocaine for several minutes before deciding to get a motel room to get out of the cold.

The three men then walked to the King's Motel, where Cox rented a room. Within approximately an hour of arriving at the motel room, the three men finished smoking their crack cocaine and defendant left the room in search of more crack cocaine and girls. Defendant returned to the motel room alone approximately twenty minutes later.

Several minutes after defendant returned, there was a knock on the motel room door. Defendant opened the door and two men with hoods and bandanas covering their faces barged in. One of the men approached Cox, held a gun in Cox's face, and demanded

money. When Cox refused, the man struck Cox in the head with the gun and took his wallet. The two men then fled.

As Cox recovered and began to call the police, defendant indicated he wanted nothing to do with the situation and also left the motel room.

Officers from the Raleigh Police Department arrived within minutes. While patrolling the area around the King's Motel, Officer Lane noticed a black male in black clothing matching the description of the suspects walking down the street and stopped him. That man was later identified as defendant. As Officer Lane spoke with defendant, he noticed two additional suspects in dark clothing running north and radioed for backup. Responding officers arrived and detained the suspects and a female. The suspects were later identified as Mark Thompson and Joseph Tucker ("co-defendant").

Officers searching the area where Thompson and co-defendant were detained recovered a wallet containing Cox's identification and a gun matching the description of that used in the robbery.

Shortly thereafter, the police brought Rydzewski to where defendant, co-defendant, and Thompson were detained. Rydzewski, from the back seat of a patrol car, then identified each suspect as they were individually brought in front of the patrol car's

headlights. At that time, defendant, co-defendant, and Thompson were arrested.

On 2 April 2012, a Wake County Grand Jury indicted defendant on two counts of robbery with a dangerous weapon and one count of conspiracy to commit robbery with a dangerous weapon for the King's Motel robbery. Co-defendant and Thompson were indicted on similar charges for the robbery. In addition, on 16 April 2012 and 25 June 2012, respectively, defendant was indicted on a further count of robbery with a dangerous weapon for a separate incident and for attaining the status of an habitual felon.

Subsequent to the indictments, Thompson entered a guilty plea and agreed to testify against defendant and co-defendant.

On 30 August 2012, the State filed a motion to join defendant's and co-defendant's cases for trial. In response, defendant filed a motion for separate trials on 11 October 2012.

Defendant's and co-defendant's cases were called for jury trial in Wake County Superior Court on 15 October 2012, the Honorable Paul G. Gessner, Judge Presiding. After hearing arguments regarding the joinder of the cases, the trial court joined defendant's and co-defendant's cases for trial.

At trial, Thompson was called as a witness by the State and testified that he and co-defendant were out looking for someone to rob when they bumped into defendant in the early morning hours of 22 February 2012. Thompson further testified that he, co-defendant, and defendant then devised the plan to rob Rydzewski and Cox in the motel room. Following the State's case, defendant took the stand in his own defense. Although defendant acknowledged that he bumped into Thompson and co-defendant while out searching for crack cocaine and girls, defendant denied any role in planning or committing the robbery. Defendant instead testified that he simply arranged to purchase crack cocaine from Thompson and co-defendant and informed them of the room where he, Rydzewski, and Cox were staying at the King's Motel.

Upon the close of all the evidence, defendant moved to dismiss the charges. The trial court allowed defendant's motion in part and denied it in part, dismissing the charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon but allowing the case to proceed to the jury on charges of common law robbery and conspiracy to commit common law robbery.

On 18 October 2012, the jury returned verdicts finding defendant guilty of the two counts of common law robbery and conspiracy to commit common law robbery stemming from the initial indictment. Defendant then entered an *Alford* plea to the additional charge of common law robbery and pled guilty to attaining the status of an habitual felon.

Defendant's convictions from the jury trial were consolidated with defendant's plea to having obtained the status of an habitual felon and defendant was sentenced to a term of 144 to 185 months imprisonment. A separate judgment was entered sentencing defendant to a concurrent term of 25 to 39 months imprisonment for defendant's *Alford* plea to common law robbery. Defendant gave oral notice of appeal following sentencing.

## II. Discussion

On appeal, defendant contends the trial court erred in granting the State's motion for joinder over his objection and denying his motion for separate trials. We disagree.

"The question of whether defendants should be tried jointly or separately is within the sound discretion of the trial judge, and the trial judge's ruling will not be disturbed on appeal absent a showing that joinder has deprived a defendant of a fair trial." *State v. Evans*, 346 N.C. 221, 232, 485 S.E.2d 271, 277

(1997), *cert. denied*, *Gillis v. North Carolina*, 522 U.S. 1057, 139 L. Ed. 2d 653 (1998).

> The law is clear in stating that the presence of antagonistic defenses does not, standing alone, warrant severance. Rather, the test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial.

*State v. Love*, 177 N.C. App. 614, 621, 630 S.E.2d 234, 239-40 (2006) (quotation marks and citations omitted).

In the present case, the trial court joined defendant's and co-defendant's cases for trial over objection on the basis that both were charged with accountability for each offense. Not only is joinder permitted in such a case, *see* N.C. Gen. Stat. § 15A-926(b)(2)(a) (2011) (Permitting the cases of two or more defendants to be joined for trial "when each of the defendants is charged with accountability for each offense[.]"), "[p]ublic policy supports consolidation of trials where defendants are alleged to be responsible for the same behavior." *State v. Tirado*, 358 N.C. 551, 564, 599 S.E.2d 515, 526 (2004) (citing *State v. Nelson*, 298 N.C. 573, 586, 260 S.E.2d 629, 639 (1979), *cert. denied*, 446 U.S. 929, 64 L. Ed. 2d 282 (1980)).

Nevertheless, on appeal defendant argues the trial court erred in joining the cases for trial because the joinder

interfered with his right to a fair trial. Specifically, defendant contends he and co-defendant had antagonistic defenses and the joinder of the cases severely prejudiced his defense because he was prohibited from introducing police testimony regarding his statements to police at the time of his arrest. Where his case came down to the credibility of the testimony at trial, defendant asserts these prior consistent statements, in which he denied involvement in the robbery committed by Thompson and co-defendant, were critical to bolster the credibility of his testimony at trial. *See State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340 (2000) ("It is well established that a witness' prior consistent statements may be admitted to corroborate the witness' sworn trial testimony but prior statements admitted for corroborative purposes may not be used as substantive evidence.").

As defendant points out, co-defendant filed a motion *in limine* to exclude inculpating statements of defendant at trial citing *Bruton v. U.S.*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968) (holding inculpating statements of a co-defendant must be excluded from evidence unless the co-defendant testifies and is subject to cross-examination). Although the State acknowledged it would not go into defendant's prior statements, co-defendant

argued defendant would likely attempt to elicit the statements on cross-examination. Upon consideration of co-defendant's argument, the trial court granted co-defendant's motion *in limine*. Thereafter, during defendant's cross-examination of Officer Lane during the presentation of the State's case, defendant was prohibited from eliciting testimony from Officer Lane regarding the substance of his statements to police at the time of his apprehension.

At the outset of our analysis, we emphasize defendant does not allege the trial court erred in applying *Bruton* to exclude testimony regarding defendant's prior statements to police. Instead, defendant argues his otherwise admissible prior consistent statements were excluded pursuant to *Bruton* as a result of the improper joinder of his case with co-defendant's case for trial, resulting in an unfair trial.

Upon review of the record, we are unpersuaded by defendant's arguments and hold defendant received a fair trial.

Although *Bruton* controlled when defendant first had the opportunity to question Officer Lane on cross-examination during the presentation of the State's case, defendant later took the stand in his own defense. While testifying defendant denied any involvement in planning and executing the robbery and testified

regarding the substance of his statements to police immediately following his apprehension. At the point defendant took the stand and was subject to cross-examination by co-defendant, *Bruton* no longer prevented defendant from eliciting testimony of his prior consistent statements. Defendant's decision not to recall those prior witnesses to elicit previously excluded testimony following his own testimony was a choice he elected to make. Yet, defendant was not denied a fair trial where he had the opportunity to do so.

In addition to arguing he was prevented from introducing his prior consistent statements, defendant further contends that there was inherent confusion in the jury instructions as a result of the joinder of the cases. Specifically, defendant argues the jury instructions prejudiced his case because they only allowed the jury to find co-defendant guilty of common law robbery on the basis that co-defendant acted either alone or together with Thompson and defendant. Similarly, the trial court's instruction for conspiracy to commit common law robbery only allowed the jury to find co-defendant guilty if co-defendant conspired with Johnson and defendant. Defendant contends that, because the trial court did not provide the jury with the option of finding co-defendant guilty on the basis that

he acted solely with Thompson, the jury instruction was susceptible to the construction that the jury must convict him if they determined co-defendant was guilty.

We acknowledge that our Supreme Court "has repeatedly held that, when two or more defendants are jointly tried for the same offense, a charge which is susceptible to the construction that the jury should convict all if it finds one guilty is reversible error." *State v. Tomblin*, 276 N.C. 273, 276, 171 S.E.2d 901, 903 (1970). This, however, is not one of those cases.

In charging the jury, the trial court issued separate instructions for each defendant on each charge. A review of the instructions reveals the instructions were clear that in order to convict defendant the jury must find beyond a reasonable doubt that defendant had a role in the robbery or conspiracy. Thus, we hold the jury instructions adequately separated defendant's and co-defendant's cases for determination by the jury and we find no merit to defendant's argument.

### III. Conclusion

For the reasons discussed above, we hold the trial court did not err in joining defendant's and co-defendant's cases for trial.

No error.

Judges McGEE and DILLON concur.

Report per Rule 30(e).