IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-736

Filed: 1 September 2020

Durham County, Nos. 14 CRS 60439, 4040; 17 CRS 2121

STATE OF NORTH CAROLINA

v.

JARRION E. HOOD

Appeal by defendant from judgments entered 29 May 2018 by Judge R. Allen Baddour, Jr., in Durham County Superior Court. Heard in the Court of Appeals 1 April 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sandra Wallace-Smith, for the State.*

*Marilyn G. Ozer for defendant-appellant.*

ZACHARY, Judge.

Defendant Jarrion E. Hood appeals from judgments entered upon a jury's verdicts convicting him of first-degree felony murder, two counts of attempted robbery with a dangerous weapon, and possession of a firearm by a felon. On appeal, Defendant argues that the trial court (1) erred by denying his written motion to strike the initial jury panel, and (2) clearly erred by overruling his *Batson* challenge. After careful review, we conclude that Defendant's first argument lacks merit. With regard to Defendant's *Batson* challenge, we remand for the trial court to conduct a proper

*Batson* hearing consistent with our Supreme Court's recent holding in *State v. Hobbs*, 374 N.C. 345, 841 S.E.2d 492 (2020).

### *Background*

In October 2014, Adam Behnawa responded to Defendant's post on Craigslist.com listing a cell phone for sale. The men arranged to meet in a residential neighborhood in Durham County, North Carolina so that Behnawa could examine the cell phone and possibly purchase it from Defendant. In the early evening of 28 October 2014, Behnawa and his son, Jawad Razai, drove to the agreed-upon location. Upon approaching the driver's side window on foot, Defendant pointed a gun at Behnawa and Razai, demanded money, and proceeded to pistol-whip Behnawa. Behnawa gave Defendant $100 and attempted to drive away, but Defendant prevented him from leaving by reaching in and turning off the truck, and he demanded Behnawa's cell phone and more money.

Despite Razai's offer of money, Defendant continued pistol-whipping Behnawa about the head. Razai exited the truck, and was eventually able to grab Defendant from behind. The men struggled for Defendant's gun; two shots were fired, one of which mortally wounded Razai.

After a foot chase, Behnawa tackled Defendant. A bystander restrained Defendant while Behnawa returned to check on his son. Behnawa prayed in Farsi as he waited for the EMTs to arrive. Razai died at the hospital while Behnawa was at

the police station giving his statement. Meanwhile, Defendant was arrested and charged with possession of a firearm by a felon, two counts of attempted robbery with a dangerous weapon, and murder.

The case against Defendant came on for trial on 14 May 2018 in Durham County Superior Court, the Honorable R. Allen Baddour, Jr., presiding.[1] Before commencing jury voir dire, defense counsel told the trial court that she was concerned that the jury venire had not been randomly selected. Counsel orally moved to strike the first 12 prospective jurors called from the jury panel; the trial court denied Defendant's motion and proceeded with voir dire. On the second day of voir dire, Defendant filed a written motion to strike the jury panel for lack of randomness, which the trial court denied in open court. On the third day of jury voir dire, Defendant raised a *Batson* challenge to the State's exercise of a peremptory strike against an African-American prospective juror. The trial court summarily denied Defendant's *Batson* challenge. The jury was empaneled the following day.

On 29 May 2018, the jury returned verdicts finding Defendant guilty of all charges. The trial court arrested judgment on both convictions for attempted robbery with a dangerous weapon. For his first-degree felony murder conviction, the trial court sentenced Defendant to life imprisonment without the possibility of parole. The trial court imposed an additional concurrent sentence of 15-27 months for

---

[1] A trial for these offenses initially commenced on 15 August 2017, but due to defense counsel's health problems, the trial court ordered a mistrial on 23 August 2017.

Defendant's conviction for possession of a firearm by a felon. Defendant gave oral notice of appeal in open court.

## *Discussion*

On appeal, Defendant argues that (1) the trial court erred by denying his written motion to strike the jury panel because it was not randomly selected, and (2) the trial court clearly erred by overruling his *Batson* challenge. We address each argument in turn.

### I. *Jury Selection Procedures*

There is a statutory two-step process for selecting the jury panel. First, the jury commission for each county constructs a master jury list of prospective jurors from lists of registered voters and licensed drivers, as well as other reliable sources of names. N.C. Gen. Stat. §§ 9-1 & 9-2(a)-(b) (2019). The clerk of superior court is then tasked with preparing a randomized list of names of individuals to be summoned for jury duty from the master jury list. *Id.* § 9-5. The clerk is required to prepare the randomized list by "a method of selection that results in each name on a list having an equal opportunity to be selected." *Id.* § 9-2(h).

In criminal cases, "[j]urors are selected [from the jury panel] . . . pursuant to section 15A-1214(a), which provides in pertinent part: 'The clerk, under the supervision of the presiding judge, must call jurors from the panel by a system of random selection which precludes advance knowledge of the identity of the next juror to be called.' " *State v. Williams*, 363 N.C. 689, 709-10, 686 S.E.2d 493, 506 (2009)

(quoting N.C. Gen. Stat. § 15A-1214(a) (2007)), *cert. denied*, 562 U.S. 864, 178 L. Ed. 2d 90 (2010). "The intended result of jury selection is to empanel an impartial and unbiased jury." *State v. Garcia*, 358 N.C. 382, 407, 597 S.E.2d 724, 743 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005).

In the instant case, Defendant contends that the trial court "violated the statutory mandate of random jury selection when it denied Defendant's written motion to strike" the first 12 prospective jurors called from the jury panel "for lack of randomness." Whether a trial court violated a statutory mandate is a question of law, subject to de novo review on appeal. *State v. Johnson*, 253 N.C. App. 337, 345, 801 S.E.2d 123, 128 (2017).

Prior to the commencement of jury selection, the clerk provided the prosecutors and defense counsel with the list of the first 12 jurors to be called from the master jury list. Each juror had previously been assigned a unique number: the numbers assigned to the first 12 prospective jurors were 25, 96, 61, 153, 6, 3, 133, 102, 165, 114, 122, and 121. Of these, 11 had surnames beginning with the letter "B," while the twelfth had a surname beginning with the letter "C." Ten of the initial prospective jurors self-identified as white or Caucasian, one as black or African-American, and one as mixed race.

Before beginning jury voir dire, defense counsel moved to strike from the jury panel the first 12 prospective jurors listed by the clerk, arguing that the fact that 11

of the first 12 prospective jurors had surnames that started with the letter "B" indicated that they had not been selected randomly. The clerk responded that this was "just coincidental." The trial court denied Defendant's motion in open court, reasoning that although "the possibility exists of an alphabetical list or a stack of juror cards being presented to the clerk, [i]t is just as likely that the list was presented to the clerk in random order or in numerical order," and concluding that the juror numbers were nonsequential and appeared to be random. Six of the first 12 prospective jurors were ultimately empaneled as jurors.

Assuming, *arguendo*, that the clerk violated the mandatory statutory procedure for calling jurors from the panel in the case at bar, "a new trial does not necessarily follow a violation of [a] statutory mandate." *State v. Love*, 177 N.C. App. 614, 623, 630 S.E.2d 234, 240-41, *disc. review denied*, 360 N.C. 580, 636 S.E.2d 192 (2006). A defendant challenging such a violation must also establish "that [he was] prejudiced by this violation." *Id.* at 623, 630 S.E.2d at 241.

Defendant contends that he was prejudiced by the racial composition of the jury that resulted from the improper selection of the initial 12 prospective jurors from the jury panel. According to Defendant, the first 12 prospective jurors did not reflect the racial composition of Durham County: ten of the initial prospective jurors self-identified as white or Caucasian, one as black or African-American, and one as mixed

race. The racial composition of the entire jury panel from which the initial 12 prospective jurors were drawn is not indicated.

In cases involving the violation of a statutory mandate for jury selection, "this Court has looked . . . to whether all peremptory challenges were exercised by the defendant in determining prejudice. If peremptory challenges are unused and the defendant makes no challenge for cause, then he cannot say he was forced to accept an undesirable juror." *Id.* at 623-24, 630 S.E.2d at 241 (citations omitted). Here, Defendant did not strike any of the initial 12 prospective jurors for cause, nor did he exercise a peremptory challenge against any of the initial 12 prospective jurors.

To be sure, it seems implausible that this particular selection of names for the initial 12 jurors called to the jury box would appear at random. Nevertheless, Defendant fails to raise "anything more than . . . a blanket assertion that [the] statutory violation of mandated jury selection procedures prejudiced [him]." *Id.* at 624, 630 S.E.2d at 241. We do not determine whether the first 12 prospective members called from the jury panel, or the jury panel as a whole, was randomly selected; however, even if there were a violation of section 15A-1214(a), Defendant has not established that the clerk's selection of the initial 12 prospective jurors "affected the conduct or outcome of his trial." *Garcia*, 358 N.C. at 408, 597 S.E.2d at 743. Accordingly, Defendant's first argument must fail.

II. *Batson Challenge*

Defendant next contends that the State exercised a peremptory challenge against an African-American prospective juror for a racially discriminatory purpose, violating "the juror's constitutional right to serve on a jury and Defendant's constitutional rights to equal protection, due process and a jury of his peers."

### A. *Standard of Review*

Upon review of a *Batson* inquiry, "[t]he findings of a trial court are not to be overturned unless the appellate court is convinced that its determination was clearly erroneous." *State v. Kandies*, 342 N.C. 419, 434-35, 467 S.E.2d 67, 75 (citation and internal quotation marks omitted), *cert. denied*, 519 U.S. 894, 136 L. Ed. 2d 167 (1996). Under this standard, an appellate court will not reverse the trial court's ruling "unless on the entire evidence we are left with the definite and firm conviction that a mistake has been committed." *State v. Taylor*, 362 N.C. 514, 528, 669 S.E.2d 239, 254 (2008) (citations and internal quotation marks omitted), *cert. denied*, 558 U.S. 851, 175 L. Ed. 2d 84 (2009). "[I]ssues of law are reviewed de novo." *Hobbs*, 374 N.C. at 349, 841 S.E.2d at 497.

### B. *Analysis*

In North Carolina, a party may challenge an unlimited number of prospective jurors for cause. *See* N.C. Gen. Stat. § 15A-1212. Parties also may exercise a limited number of peremptory challenges to strike potential jurors, usually without any explanation. *See State v. Smith*, 291 N.C. 505, 526, 231 S.E.2d 663, 676 (1977) ("The

essential nature of the peremptory challenge denotes that it is a challenge exercised without a reason stated, without inquiry and without being subject to the court's control."). Each defendant may exercise as many as six peremptory challenges during jury voir dire in a noncapital case, while the State is allowed six peremptory challenges per defendant. N.C. Gen. Stat. § 15A-1217(b). The parties are also "entitled to one peremptory challenge for each alternate juror in addition to any unused challenges." *Id.* § 15A-1217(c).

Peremptory challenges generally allow a party to remove a prospective juror for any reason. However, article I, section 26 of the North Carolina Constitution prohibits the use of peremptory challenges to exclude potential jurors "from jury service on account of sex, race, color, religion, or national origin." N.C. Const. art. I, § 26. In addition, the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States "prohibits discrimination in jury selection on the basis of race, *see Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), or gender, *see J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 128 L. Ed. 2d 89 (1994)." *State v. Maness*, 363 N.C. 261, 271, 677 S.E.2d 796, 803 (2009), *cert. denied*, 559 U.S. 1052, 176 L. Ed. 2d 568 (2010). "Even a single act of invidious discrimination may form the basis for an equal protection violation." *State v. Robbins*, 319 N.C. 465, 491, 356 S.E.2d 279, 295, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

In order to determine whether the State has engaged in impermissible racial discrimination in the selection of jurors, as proscribed by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), the trial court must conduct a three-part analysis:

> First, the defendant must establish a *prima facie* case that the State has exercised a peremptory challenge on the basis of race. Second, once the *prima facie* case has been established by the defendant, the burden shifts to the State to rebut the inference of discrimination by offering a race-neutral explanation for attempting to strike the juror in question. The explanation must be clear and reasonably specific, but need not rise to the level justifying exercise of a challenge for cause. The prosecutor is not required to provide a race-neutral reason that is persuasive or even plausible. The issue at this stage is the facial validity of the prosecutor's explanation; and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral. Our courts also permit the defendant to introduce evidence at this point that the State's explanations are merely a pretext. Third, and finally, the trial court must make the ultimate determination as to whether the defendant has carried his burden of proving purposeful discrimination.

*State v. Braxton*, 352 N.C. 158, 179-80, 531 S.E.2d 428, 440-41 (2000) (citations and internal quotation marks omitted), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001).

Our Supreme Court recently addressed the assessment required of a trial court in evaluating a *Batson* challenge. *Hobbs*, 374 N.C. at 349-60, 841 S.E.2d at 497-503. The defendant in *Hobbs* was an African-American male who was indicted for

numerous felonies, including murder. *Id.* at 346, 841 S.E.2d at 495. Prior to trial, the defendant filed a motion containing statistical information regarding prior capital cases tried in the county in which he was being tried.[2] *Id.* During voir dire, the defendant raised *Batson* challenges to the State's peremptory challenges of African-American prospective jurors. *Id.* The trial court denied the defendant's *Batson* challenges, ruling that the State's peremptory challenges were not made on the basis of race. The defendant was convicted of first-degree murder by malice, premeditation, and deliberation, and also under the felony-murder rule, along with five other felonies. *Id.* at 346-47, 841 S.E.2d at 495.

On appeal, our Supreme Court held, in pertinent part, that the trial court erred by failing to properly "consider[ ] all of the evidence necessary to determine whether [the defendant] proved purposeful discrimination with respect to the State's peremptory challenges" of the potential jurors in question. *Id.* at 356, 841 S.E.2d at 501. Citing the United States Supreme Court's recent decision in *Flowers v. Mississippi*, ___ U.S. ___, ___, 204 L. Ed. 2d 638, 657 (2019), the *Hobbs* Court stated that a defendant attempting to prove purposeful discrimination is entitled to "rely on all relevant circumstances to support a claim of racial discrimination in jury selection[,]" and to offer evidence that might include:

---

[2] Unlike the instant case, the defendant in *Hobbs* was capitally tried. *Hobbs*, 374 N.C. at 348, 841 S.E.2d at 496. However, this distinction has no bearing on our *Batson* analysis.

- statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case;
- evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case;
- side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case;
- a prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing;
- relevant history of the State's peremptory strikes in past cases; or
- other relevant circumstances that bear upon the issue of racial discrimination.

*Id.*

"[W]hen a defendant presents evidence raising an inference of discrimination, a trial court, and a reviewing appellate court, must consider that evidence in determining whether the defendant has proved purposeful discrimination in the State's use of a peremptory challenge." *Id.* Thus, in *Hobbs*, the trial court erred by, *inter alia*, failing to "explain how it weighed the totality of the circumstances surrounding the prosecution's use of peremptory challenges, including the historical evidence," and failing to conduct a comparative juror analysis, in an order supported by findings of fact and conclusions of law, and the case was remanded for a new *Batson* hearing. *Id.* at 358, 841 S.E.2d at 502.

In the instant case, Defendant raised a *Batson* challenge to the State's use of a peremptory challenge to strike an African-American prospective juror, Jermichael

Smith. Defense counsel first presented the trial court with evidence of the prosecutor's "strike rate," which she contended showed that the State had exercised a disproportionate number of challenges against African-American prospective jurors, together with historical evidence of racial disparities in jury selection in North Carolina and in Durham County specifically. Defense counsel also noted that Defendant was African-American, while the victims were Afghan-Americans, and were "described as light-skinned by the witnesses[.]"

Additionally, defense counsel argued that despite Smith being "an ideal juror for the State in many ways," there were other indicia of racial discrimination, including the prosecutor's disparate questioning of Smith as compared to the other prospective jurors. For example, defense counsel noted that the prosecutor asked Smith "about being from a middle-class neighborhood, which did not come up with any of the other jurors." Defense counsel also claimed, *inter alia*, that the State improperly exercised a peremptory challenge against Smith because "he said that his cultural beliefs were that he's a black male," which Smith "expressed as distrust of the system"; therefore, "to the extent that the cultural beliefs [we]re the reason for the strike, [Smith] himself . . . directly linked that to his race as a black male."

The prosecutor responded that Smith was peremptorily challenged for race-neutral reasons, offering in rebuttal that Smith expressed an intense distrust of the legal system, and that he seemed to be strongly affected by the murders of several

friends, whose deaths he felt were "of little concern to the government." In addition, the prosecutor noted his personal impression from Smith's responses during voir dire that although Smith had previously been a crime victim, he had also been a participant in a crime.

Defense counsel asserted in surrebuttal that the State's "laundry list" of reasons for the peremptory challenge was "inherently some evidence of pretextualness." Counsel also argued that Smith's distrust of the system was the result of being a black male, and therefore was not a race-neutral reason for the State's exercise of its strike. Moreover, defense counsel asserted that Smith "was differentially questioned" as compared to other prospective jurors, who received far fewer questions from the prosecutor.

The State then responded to Defendant's surrebuttal. Defendant moved to strike the rebuttal to the surrebuttal, but the trial court did not rule on that motion. The trial court then summarily denied Defendant's *Batson* challenge, without making any findings of fact or conclusions of law.

The trial court's summary denial of Defendant's *Batson* challenge precludes appellate review. The trial court was tasked with considering the evidence and determining whether the challenged strike of prospective juror Smith "was motivated in substantial part by discriminatory intent" on the part of the State. *Id.* at 353, 841 S.E.2d at 499 (citation and internal quotation marks omitted). Without specific

findings of fact, this Court cannot establish on review that the trial court "appropriately considered all of the evidence necessary to determine whether [Defendant] proved purposeful discrimination with respect to the State's peremptory challenge[ ]" of Smith. *Id.* at 356, 841 S.E.2d at 501.

Moreover, the trial court's ruling was deficient in that it "did not explain how it weighed the totality of the circumstances surrounding the prosecution's use of peremptory challenges[.]" *Id.* at 358, 841 S.E.2d at 502; *see also id.* ("[T]here is nothing new about requiring a court to consider all of the evidence before it when determining whether to sustain or overrule a *Batson* challenge.").

Pursuant to *Hobbs*, the trial court therefore erred in failing to make the requisite findings of fact and conclusions of law addressing the evidence presented by counsel. *See id.* at 360, 841 S.E.2d at 503-04 (remanding to the trial court with instructions "to conduct a *Batson* hearing . . . [and] to make findings of fact and conclusions of law"); *State v. Williams*, 343 N.C. 345, 359, 471 S.E.2d 379, 386 (1996) ("[I]t becomes the responsibility of the trial court to make appropriate findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext."), *cert. denied*, 619 U.S. 1061, 136 L. Ed. 2d 618 (1997).

As made evident by our Supreme Court, the trial court's error requires remand for a new *Batson* hearing. *Hobbs*, 374 N.C. at 360, 841 S.E.2d at 504. "On remand, considering the evidence in its totality, the trial court must consider whether the

primary reason given by the State for challenging juror [Smith] was pretextual. This determination must be made in light of all the circumstances" surrounding the State's use of its peremptory challenge. *Id.* at 360, 841 S.E.2d at 503. The trial court's order should demonstrate that the trial court considered all evidence presented by the parties, and evince the trial court's analysis in reaching its ultimate determination.

### *Conclusion*

Defendant was not prejudiced by the trial court's denial of Defendant's motion to strike the initial jury panel due to an alleged, but unsubstantiated, violation of a statutory mandate.

Under the standard in *Hobbs*, the trial court erred in failing to make findings of fact and conclusions of law reflecting its analysis of the evidence in ruling upon Defendant's *Batson* challenge. We therefore remand this case to the trial court with instructions to conduct a *Batson* hearing consistent herewith and to enter an order containing the requisite findings of fact and conclusions of law.

NO ERROR IN PART; REMANDED FOR REHEARING.

Judges TYSON and BROOK concur.